Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| ELDA GONZÁLEZ SANTIAGO<br><br>*Apelante*<br><br>v.<br><br>MICHAEL ZARCONE CANDELARIO<br><br>*Apelado* | KLAN202300798 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV06071 (907)<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Provisional y Permanente) |
|---|---|---|

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 27 de noviembre de 2023.

Comparece la señora Elda González Santiago (señora González Santiago o apelante) mediante recurso de *Apelación* y nos solicita que revoquemos la *Sentencia Enmendada* emitida el 20 de julio de 2023, notificada el 21 de julio de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el foro primario declaró Ha Lugar una *Moción de desestimación por falta de jurisdicción sobre la materia* presentada por el señor Michael Zarcone Candelario (señor Zarcone Candelario o apelado).

Por los fundamentos que expondremos a continuación, **confirmamos** la determinación impugnada.

### I.

El 22 de junio de 2023, la señora González Santiago presentó una *Demanda*[1] sobre entredicho provisional e interdicto preliminar y permanente contra el señor Zarcone Candelario. Los hechos que

---

[1] Apéndice del recurso de *Apelación*, págs. 1-119.

Número Identificador
SEN2023_____

originaron la causa de acción comenzaron en el año 2021, cuando el apelado compró un inmueble en el mismo condominio donde reside la señora González Santiago. Específicamente, el señor adquirió el inmueble que ubica en el segundo nivel del Condominio Edificio Santa Rita (el Condominio), justo sobre el apartamento de la señora González Santiago, ubicado en el primer nivel. Como parte de sus alegaciones, sostuvo que el 19 de mayo de 2022, el apelado le remitió un correo electrónico en el que indicó que durante dicha semana habría mucho ruido debido a que estarían realizando unas obras en su apartamento las cuales incluían, entre otras, reforzar las paredes del baño y la cocina.

El 21 de mayo de 2022, la señora González Santiago respondió al mensaje, cuestionando a qué se refería el apelado al indicar que reforzaría las paredes de la cocina y el baño. Ante la falta de respuesta, el 24 de mayo de 2022, la apelante escribió nuevamente al señor Zarcone Candelario con la misma inquietud. Además, incluyó legislación relacionada al Régimen de Propiedad Horizontal al que está sometido el Condominio, así como de la Ley Núm. 129 de 16 de agosto de 2020, según enmendada, conocida como la Ley de Condominios de Puerto Rico (Ley de Condominios)[2].

Según esgrimió en su *Demanda*, en la misma fecha, el 24 de mayo de 2022, "hubo ruidos estruendosos en [su] propiedad"[3]. Al siguiente día, el 25 de mayo de 2022, el señor Zarcone Candelario respondió el correo electrónico. En síntesis, manifestó que las remodelaciones no afectarían "los muros, techos o pisos básicos comunes"[4], por lo que no se entorpecería la estabilidad estructural del Condominio ni los elementos comunes.

---

[2] 31 LPRA secs. 1921a *et seq.*
[3] Apéndice del recurso de *Apelación,* pág. 3.
[4] *Íd.*, pág. 78.

El mismo día, 25 de mayo de 2022, la señora González Santiago acudió a la Oficina Municipal de Permisos de San Juan (Oficina de Permisos). Según indicó, allí pudo observar los planos de la construcción del señor Zarcone Candelario, así como el memorial explicativo del proyecto, percatándose de incongruencias en las obras que estarían llevándose a cabo. Sostuvo que de los planos se derivaban alteraciones a la fachada del edificio y la demolición de elementos comunes necesarios, mientras que el memorial aludía únicamente a una remodelación interior. Ante ello, la señora González Santiago presentó una *Querella*[5] ante la Oficina de Permisos.

El 7 de junio de 2022, la Oficina de Permisos emitió una carta[6] dirigida al señor Zarcone Candelario, en la que le indicó que los permisos para la obra que realizaba no habían sido aprobados, por lo que había construido sin autorización, en violación a las disposiciones del *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Regla 1.6.7 Permisos y Certificaciones. Consecuentemente, la Oficina de Permisos le ordenó que culminara el proceso para obtener el permiso de construcción en los siguientes diez (10) días.

Así las cosas, el permiso de construcción fue otorgado el 28 de julio de 2022. Más tarde, el 9 de agosto de 2022, la señora González Santiago solicitó que la investigación de la *Querella* continuase. Luego, el 18 de octubre de 2022, la apelante acudió nuevamente a la Oficina de Permisos en donde, según alegó, inspeccionó el permiso de construcción y solicitó que se le enviara copia del expediente.

---

[5] *Íd.*, págs. 93-94.
[6] *Íd.*, pág. 95.

Debido a todo lo anterior, la señora González Santiago solicitó que se ordenara el cese y desista de cualquier acto contrario a la ley y a la escritura matriz del condominio, así como que se ordenara la demolición de la obra y el restablecimiento de los elementos comunes a su estado original y, que se anulara el permiso de construcción.

Tras la expedición del emplazamiento correspondiente, el 23 de junio de 2023, el foro de instancia emitió una *Resolución y Orden*[7], mediante la cual declaró No Ha Lugar el entredicho provisional, por incumplimiento con la Regla 57.1 (a) y (b) de las de Procedimiento Civil. Además, el TPI acortó el término para que el apelado presentara su alegación responsiva, concediéndole un plazo de cinco (5) días para ello[8].

El 30 de junio de 2023, el señor Zarcone Candelario presentó *Moción Asumiendo Representación Legal y Solicitud de Prórroga*[9]. Por medio de esta, solicitó un término adicional de diez (10) días para someter su alegación responsiva. En la misma fecha[10], el foro primario intimó *Orden*[11] concediendo la prórroga solicitada, hasta el 10 de julio de 2023[12].

Ante ello, el 10 de julio de 2023, el señor Zarcone Candelario presentó su *Contestación a Demanda*[13]. En síntesis, insistió en que no se había realizado obra alguna que afectara la fachada, los elementos comunes, la conservación, solidez ni la estructura del edificio. Como defensas afirmativas sostuvo, entre otras, que la *Demanda* no exponía alegaciones suficientes que justificaran la

---

[7] *Íd.*, págs. 120-121.
[8] *Íd.*
[9] *Íd.*, págs. 128-129.
[10] La *Orden* fue notificada el 5 de julio de 2023.
[11] Apéndice del recurso de *Apelación*, pág. 135.
[12] Cabe mencionar que el 5 de julio de 2023, se generó una *Notificación Electrónica* a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), en la que se indicó que la moción carecía del arancel de primera comparecencia. Conforme surge de SUMAC, el mismo fue pagado en esa misma fecha. Véase, apéndice del recurso de *Apelación*, pág. 133 y entrada número 10 en SUMAC.
[13] Apéndice del recurso de *Apelación*, págs. 136-150.

imposición de un *injunction* y, levantó la doctrina de agotamiento de remedios.

Simultáneamente, el señor Zarcone Candelario presentó una *Moción de desestimación por falta de jurisdicción sobre la materia*[14], en la que alegó que el Departamento de Asuntos del Consumidor (DACo) era el foro con jurisdicción exclusiva para atender el asunto planteado por la señora González Santiago. Adujo, además, que ya existía una querella ante dicha agencia, presentada por la apelante, en la que se incluían alegaciones y se solicitaban remedios idénticos a los que figuraban en la *Demanda*. Asimismo, indicó que la apelante había presentado otras reclamaciones judiciales y administrativas relacionadas al mismo asunto.

Tras varios trámites, el 17 de julio de 2023, la señora González Santiago presentó *Moción en oposición a la desestimación*[15]. Sostuvo que la querella presentada ante el DACo era contra la Junta de Directores y el Consejo de Titulares con relación a una anulación de una asamblea y unas determinaciones tomadas, y que no estaban vinculadas a su solicitud de revocación del permiso de construcción. Añadió que la *Demanda* fue presentada al amparo de la Ley Núm. 161 de 1 de diciembre de 2009, conocida como la Ley para la Reforma del Proceso de Permisos de Puerto Rico (Ley Núm. 161-2009), la cual permite la presentación de un recurso ante el foro primario, aun cuando ya se haya incoado una querella.

Así las cosas, el 20 de julio de 2023, notificada el 21 de julio de 2023, el TPI emitió una *Sentencia Enmendada*[16]. En virtud de esta, el foro primario acogió la moción dispositiva instada por el apelado y la declaró Ha Lugar. Razonó que, al tomar como ciertos

---

[14] *Íd.*, págs. 151-160.
[15] *Íd.*, págs. 168-185.
[16] *Íd.*, págs. 186-197. Una Sentencia fue previamente emitida y notificada el 20 de julio de 2023. No obstante, el mismo día, pero notificada al día siguiente, el TPI emitió la *Sentencia Enmendada* de manera *nunc pro tunc,* a los únicos fines de corregir ciertos errores clericales.

todos los hechos bien alegados en la *Demanda,* e interpretarlos de la manera más favorable a la apelada, resultaba evidente que el remedio de *injunction* solicitado era improcedente con el caso. El tribunal de instancia detalló que la presentación del recurso extraordinario que contemplaba la Ley Núm. 161-2009, *supra,* para la paralización o demolición de una obra, suponía un remedio que procedía cuando se demostrara que la obra realizada no contaba con las autorizaciones y los permisos correspondientes o, que la misma se hubiese realizado en contravención al permiso otorgado. Agregó, además, que la parte que presentara una reclamación amparada en dicho precepto legal venía obligada a demostrar una de las siguientes: (1) que el permiso de construcción había sido otorgado mediando información incorrecta o falsa; (2) que el uso que se estaba llevando a cabo no estaba autorizado o, (3) que se llevó a cabo una obra de construcción sin los permisos necesarios.

A tenor con lo anterior, el TPI concluyó como sigue:

En la demanda de epígrafe, la única referencia que hace la parte [apelante] -en el contexto de los hechos del caso- a los criterios del Artículo 14.1 de la referida ley es que el demandado presentó una solicitud de permiso con información falsa o errónea, debido a que hay claras incongruencias entre el memorial explicativo y los planos **con respecto a la manera en que las obras alterarían la fachada del Condominio**. Además, la parte [apelante] sostuvo que dicho permiso se solicitó "en claro incumplimiento a la escritura matriz del condominio y ley de condominios". *Entrada núm. 1 del expediente electrónico,* pág. 10.

Ante ello, reiteramos que el procedimiento independiente, sumario y limitado bajo el Artículo 14.1 de la Ley Núm. 161-2009 no es el vehículo procesal apropiado para ventilar los reclamos y fundamentos jurídicos de la parte demandante a los fines de impugnar el permiso de construcción en controversia y solicitar la demolición de una obra que se construye en virtud de dicho permiso (cuya presunción de corrección surge de la propia Ley de Permisos) por el fundamento medular de que tales obras son contrarias a la Ley de Condominios, a la escritura matriz y el reglamento del condominio. Para atender tales reclamos, existen otros vehículos procesales adecuados que no son el procedimiento especial que estatuye el referido Artículo 14.1.[17] (Énfasis en el original.)

---

[17] Apéndice del recurso de *Apelación,* pág. 208.

En desacuerdo con la determinación, y tras otros varios trámites, el 4 de agosto de 2023, la apelante presentó *Moción en oposición a costas y honorarios de abogado y Moción solicitando reconsideración de la sentencia*[18]. Con relación a la reconsideración, la señora González Santiago insistió en las alegaciones contenidas en su *Demanda*.

El 11 de agosto de 2023, el TPI emitió *Resolución*[19], en la que, en lo pertinente, declaró No Ha Lugar la aludida solicitud, en virtud de la Regla 47 de las de Procedimiento Civil de Puerto Rico. El foro primario mantuvo su postura en cuanto a que el procedimiento especial bajo el Artículo 14.1 de la Ley Núm. 161-2009 no estaba diseñado "para atender de manera colateral planteamientos basados fundamentalmente en la Ley de Condominios"[20]. Indicó que las alegaciones realizadas por la apelante no equivalían a que el permiso había sido obtenido a través de información falsa o incorrecta, "a los fines del requisito que establece el [referido Artículo 14.1] para que proceda su revocación mediante este procedimiento especial de alcance limitado"[21].

Inconforme aún, el 8 de septiembre de 2023 la señora González Santiago presentó el recurso de *Apelación* que nos ocupa, en el cual le imputó al foro de instancia la comisión de los siguientes errores:

> Err[ó] el Tribunal de Primera Instancia al no tomar en consideración que la Moción asumiendo representación legal y solicitud de pr[ó]rroga fue presentada al pagar el arancel correspondiente el 5 de julio de 2023.

> Err[ó] el Tribunal de Primera Instancia al entender que la parte apelada compadeció[sic] oportunamente aun habiendo una notificación del 5 de julio de 2023 de no presentada la Moción asumiendo representación legal y solicitud de prórroga por falta de pago de aranceles.

> Err[ó] el Tribunal de Primera Instancia concediendo una prórroga luego de expirado el plazo concedido de 5 días.

---

[18] *Íd.*, págs. 217-232.
[19] *Íd.*, págs. 233-234.
[20] *Íd.*, pág. 234.
[21] *Íd.*

> Err[ó] el Tribunal de Primera Instancia al concluir que la demanda no procedía por medio del Art[í]culo 14.1 Ley núm. 161-2009.
>
> Err[ó] el Tribunal de Primera Instancia al desestimar la demanda.
>
> Err[ó] El Tribunal de Primera Instancia al demostrar parcialidad.

El 30 de octubre de 2023, el señor Zarcone Candelario compareció mediante *Alegato en Oposición a Recurso de Apelación*. Perfeccionado el recurso y examinados los documentos que obran en el expediente, estamos en posición de resolver.

## II.

## -A-

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil[22], "es aquella que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra"[23]. La citada regla dispone que la parte demandada puede presentar una moción de desestimación en la que alegue las defensas siguientes:

(1) falta de jurisdicción sobre la materia;
(2) falta de jurisdicción sobre la persona;
(3) insuficiencia del emplazamiento;
(4) insuficiencia del diligenciamiento del emplazamiento;
(5) dejar de exponer una reclamación que justifique la concesión de un remedio;
(6) dejar de acumular una parte indispensable[24].

Al resolver una moción de desestimación bajo la Regla 10.2 (5), *supra*, los tribunales deberán tomar "como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas"[25]. La norma que impera es que "tales alegaciones hay que interpretarlas conjuntamente, liberalmente, y de la manera más favorable posible para la parte demandante"[26]. Por lo tanto, "al

---

[22] 32 LPRA Ap. V, R. 10.2.
[23] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008).
[24] *González Méndez v. Acción Social de Puerto Rico*, 196 DPR 213, 234 (2016).
[25] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* supra, pág. 428.
[26] *Íd.,* pág. 429.

examinar la demanda para resolver este tipo de moción se debe ser sumamente liberal y 'únicamente procedería [desestimar] cuando de los hechos alegados no podía concederse remedio alguno a favor del demandante'"[27]. Además, "[t]ampoco procede la desestimación, si la demanda es susceptible de ser enmendada"[28].

Nuestro máximo foro judicial ha expresado que al examinar una moción de este tipo "debemos considerar, 'si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida'"[29]. Además, el Tribunal debe aceptar como ciertos todos los hechos que hayan sido bien alegados en la demanda y excluir de sus análisis conclusiones legales. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba[30].

**-B-**

El interdicto o *injunction* es un procedimiento especial dirigido a proteger al promovente de daños irreparables a su propiedad o a otros derechos mediante una orden que prohíba u ordene ejecutar ciertos actos; gobernado por la Regla 57 de Procedimiento Civil[31], y por los Artículos 675 a 689 del Código de Enjuiciamiento Civil[32]. Al emitirse, constituye un mandato judicial

---

[27] *Colón Rivera v. Secretario, et al*, 189 DPR 1033, 1049 (2013), que cita a R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231.
[28] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, supra, pág. 429.
[29] *Íd.*, pág. 429 que cita a *Pressure Vessels P.R. v. Empire Gas P.R.*, [137 DPR 497 (1994)], *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991).
[30] R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 268.
[31] 32 LPRA Ap. V, R. 57.
[32] 32 LPRA secs. 3521-3566.

que requiere a una persona que haga o se abstenga de hacer o que permita hacer, determinada cosa que infrinja o perjudique el de otra[33]. Este remedio extraordinario se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley vulnerado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico[34].

Es característica esencial del auto de *injunction* su vigencia inmediata a partir de la notificación de la sentencia; su eficacia descansa en su naturaleza sumaria y en su pronta ejecución[35]. *Íd.* Los tribunales pueden tomar medidas específicas para eliminar la perturbación, sin prohibir absolutamente la conducta del demandado[36].

El interdicto es un remedio discrecional que ha de concederse con cautela, luego que el promovente demuestre la existencia de los requisitos para su expedición y que el tribunal realice un balance de conveniencias y equidades[37]. Entre los requisitos para su expedición se encuentran la irreparabilidad del daño, la existencia de un remedio adecuado en ley y la probabilidad de prevalecer. Sólo procede en situaciones claras en que las actuaciones del demandado menoscaban o afectan el derecho que el demandante interesa proteger o que pueden perjudicarlo[38]. Por ello, no procede la expedición de un interdicto para la protección de un derecho dudoso[39].

Aquél que solicita el interdicto debe acudir al tribunal sin mediar tardanza inexcusable, carecer de un remedio adecuado en

---

[33] 32 LPRA sec. 3521.
[34] *Plaza Las Américas v. N&H*, 166 DPR 631, 643 (2005).
[35] *Ortega Cabrera v. Tribunal Superior*, 101 DPR 612 (1973).
[36] *Flores Berger v. Colberg*, 173 DPR 843 (2008).
[37] Véase, 32 LPRA sec. 3523; *Municipio de Loíza v. Sucn. Suárez. et. als.*,154 DPR 333, 367 (2001).
[38] *Véase,* 32 LPRA sec. 3523(2); *E.L.A. v. Asoc. de Auditores,* 147 DPR 669, 679 (1999).
[39] 32 LPRA sec. 3523(1).

el proceso ordinario, y demostrar que de no concederse antes de adjudicarse el caso en sus méritos sufriría un daño irreparable[40].

La Regla 57 de Procedimiento Civil, *supra*, dispone tres modalidades de interdictos o i*njunctions*. Las órdenes de entredicho se emiten *ex parte*, son de naturaleza discrecional, pueden ser emitidas sin notificación a la parte afectada si se demuestra la existencia de un daño inmediato, y son de corta duración, pues expiran, de ordinario, dentro de un máximo de diez (10) días, prorrogables por diez (10) días más[41]. Mientras, el interdicto preliminar o interlocutorio es un remedio provisional que persigue mantener el *status quo* hasta que se celebre el juicio en sus méritos, con el fin de que la conducta del demandado no convierta en académica la sentencia que finalmente se dicte o que se le ocasione al peticionario un daño de mayor consideración mientras se dilucida el litigio[42].

El interdicto preliminar se emite discrecionalmente mediante notificación previa a la otra parte de la orden con copia de la petición de *injunction*, luego de la celebración de una vista, conforme a la Regla 57.1 de Procedimiento Civil, *supra*, de manera que no interfiera con la naturaleza sumaria y expedita de este procedimiento[43]. Su concesión no prejuzga el caso, pero la orden es efectiva hasta que finalice el proceso[44].

Los criterios para determinar la concesión o negación de una solicitud de *injunction* preliminar son: (1) la naturaleza de los daños que puedan ocasionárseles a las partes de conceder o denegarlo; (2) la irreparabilidad o existencia de un remedio adecuado en ley; (3) la

---

[40] Véase, *Asoc. de Vecinos de Villa Caparra Sur v. Asociación de Fomento Educativo*, 173 DPR 304 (2008).
[41] *Véase, Arrarás v. Tribunal Superior*, 100 DPR 379 (1972).
[42] *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304, 317 (2008); *Rullán v. Fas Alzamora*, 166 DPR 742 (2006).
[43] *Municipio de Ponce v. Gobernador*, 136 DPR 776 (1994).
[44] Regla 57.1 de Procedimiento Civil, *supra; Sucn. Figueroa v. Hernández*, 72 DPR 508, 514 (1951).

probabilidad de que la parte promovente prevalezca eventualmente al resolver el litigio en su fondo; (4) la probabilidad de que la causa se torne académica de no concederlo, y (5) el posible impacto sobre el interés público del remedio que se solicita[45].

Por su parte, el interdicto permanente se produce por una sentencia final. Sin embargo, después del juicio en sus méritos y antes de ordenar un *injunction* permanente, el tribunal debe considerar, nuevamente, la existencia o ausencia de algún otro remedio adecuado en ley[46]. Al determinar si procede otorgar un interdicto permanente, el tribunal deberá considerar igualmente los siguientes criterios: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público involucrado y (4) el balance de equidades[47].

**-C-**

La "Ley para la Reforma del Proceso de Permisos de Puerto Rico", Ley Núm. 161 de 1 de diciembre de 2009, según enmendada (Ley Núm. 161-2009), se creó a los fines de establecer el marco legal y administrativo que rige la solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico[48]. La Ley Núm. 161-2009 debe ser interpretada de modo que asegure que las determinaciones realizadas a su amparo se lleven a cabo de modo transparente, certero, confiable, uniforme, ágil y garantizando el debido proceso de ley[49].

El Artículo 9.10 de la Ley Núm. 161-2009, establece la certeza de los permisos expedidos por la Oficina de Gerencia de Permisos, por el Municipio Autónomo con Jerarquía de la I a la V y por los

---

[45] *Mun. de Ponce v. Gobernador,* supra.
[46] *Universidad del Turabo v. Liga Atlética Interuniversitaria,* 126 DPR 497, 505 (1990).
[47] *Plaza Las Américas v. N&H,* supra, pág. 644.
[48] "Ley para la Reforma del Proceso de Permisos de Puerto Rico", Ley 161-2009, según enmendada, 23 LPRA sec. 9011, *et seq.*
[49] Artículo 1.3 de la Ley Núm. 161-2009, 23 LPRA sec. 9011 nota.

profesionales no autorizados[50]. Al respecto, dicho artículo expresamente dispone lo siguiente:

> Se presume la corrección y la legalidad de las determinaciones finales y de los permisos expedidos por la Oficina de Gerencia de Permisos, por el Municipio Autónomo con Jerarquía de la I a la V y por los Profesionales Autorizados. No obstante, cuando medie fraude, dolo, engaño, extorsión, soborno o la comisión de algún otro delito en el otorgamiento o denegación de la determinación final o del permiso, o en aquellos casos en que la estructura represente un riesgo a la salud o la seguridad, a condiciones ambientales o arqueológicas, la determinación final emitida y el permiso otorgado por la Oficina de Gerencia de Permisos, por el Municipio Autónomo con Jerarquía de la I a la V o por el Profesional Autorizado, deberá ser revocado. La estructura se podrá modificar, conservar o demoler, sólo después de que un Tribunal competente así lo determine y siguiendo con el procedimiento judicial establecido en el Capítulo XIV de esta Ley, además de cumplir con el debido proceso de ley.
>
> Además, se dispone que, bajo ninguna circunstancia, una determinación final será suspendida, sin mediar una autorización o mandato judicial de un Tribunal competente o el foro correspondiente, en estricto cumplimiento con el debido proceso de ley. Las disposiciones de este Artículo no crearán un precedente reclamable por terceros ajenos a la propiedad objeto del permiso. Entendiéndose que, sujeto a lo dispuesto en esta Ley, una determinación final se considerará final y firme, o un permiso, y no podrá ser impugnado una vez el solicitante haya cumplido con todos los requisitos establecidos en la notificación de determinación final y haya transcurrido el término de veinte (20) días sin que una parte adversamente afectada por la notificación haya presentado un recurso de revisión o un proceso de revisión administrativa, así como haya transcurrido el término de treinta (30) días para solicitar revisión judicial. No obstante, la parte adversamente afectada por una determinación final, podrá ser revisada sujeto a lo establecido en esta Ley.
>
> De igual manera, tales permisos deberán ser sostenidos en su legalidad y corrección por las Entidades Gubernamentales Concernidas frente a ataques de terceros. Cuando medie fraude, dolo, engaño, extorsión, soborno, o la comisión de algún delito en el otorgamiento del permiso, o en aquellos casos en que la estructura represente un riesgo a la salud, la seguridad, a condiciones ambientales o arqueológicas, y sujeto a lo dispuesto en esta Ley, el permiso otorgado por la Oficina de Gerencia, por el Municipio Autónomo con Jerarquía de la I a la V o por el Profesional Autorizado, deberá ser revocado. La obra deberá ser modificada, conservada o demolida, sólo después de que el foro administrativo o judicial competente así lo determine y siguiendo con el procedimiento judicial establecido en el Capítulo XIV de esta Ley, además de cumplir con el debido proceso de ley[51]. (Énfasis nuestro).

Por su parte, el Capítulo XIV de la Ley Núm. 161-2009, contiene las disposiciones aplicables a los casos en los que debe

---

[50] Artículo 9.10 de la Ley Núm. 161-2009, 23 LPRA sec. 9019i.
[51] *Íd.*

presentarse una acción ante el Tribunal de Primera Instancia[52]. A esos efectos, el Art. 14.1 de la Ley 161-2009, dispone lo siguiente:

> La Junta de Planificación, así como cualquier entidad gubernamental concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico en representación del interés público o una persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de *injunction*, *mandamus*, sentencia declaratoria, o cualquier otra acción adecuada para solicitar: (1) la revocación de un permiso otorgado, cuya solicitud se haya hecho utilizando información incorrecta o falsa; (2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; (3) la paralización de un uso no autorizado; (4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado. [...][53].

**-D-**

Toda parte que comparezca por primera vez ante el TPI, el Tribunal de Apelaciones o el Tribunal Supremo está obligada a pagar aranceles de presentación y adherir los sellos de rentas internas correspondientes, esto de acuerdo con la Ley de Aranceles de Puerto Rico, Sec. 1 Ley Núm. 17 de 11 de marzo de 1915, según enmendada (Ley Núm. 17-1915)[54]. De lo contrario, el recurso presentado será nulo y carecerá de valor[55]. Así pues, el pago de aranceles es una de las condiciones necesarias para que se perfeccione cualquier recurso[56]. El propósito de este requisito es cubrir los gastos asociados a los trámites judiciales[57]. La sanción de nulidad por no adherir los sellos de rentas internas a los documentos judiciales busca evitar un fraude al erario[58].

---

[52] Art. 14.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9024.

[53] *Íd.*

[54] 32 LPRA sec. 1476.

[55] Sección 5 de la Ley Núm. 17-1915, *supra*; *M-Care Compounding et al. v. Depto. Salud*, 186 DPR 159, 174 (2012); *Gran Vista I v. Gutiérrez y Otros*, 170 DPR 174, 188-189 (2007); *Maldonado v. Pichardo*, 104 DPR 778, 781 (1976).

[56] *M-Care Compounding et al. v. Depto. Salud*, supra, pág. 174.

[57] Sección 2 de la Ley Núm. 17-1915, *supra*; *M-Care Compounding et al. v. Depto. Salud*, supra, pág. 174; *Gran Vista I v. Gutiérrez y Otros*, supra, pág. 188.

[58] Sección 2 de la Ley Núm. 17-1915, *supra*; *M-Care Compounding et al. v. Depto. Salud*, supra, pág. 174; *Gran Vista I v. Gutiérrez y Otros*, supra, pág. 188.

De conformidad con la facultad que le confirió la Ley Núm. 47-2009, el Tribunal Supremo emitió una Resolución, la cual fue aprobada por la Asamblea Legislativa, para cambiar las cantidades de los derechos arancelarios. En lo pertinente al caso de autos, por la primera alegación de la parte demandada en un pleito civil contencioso, sea contestación o moción en el Tribunal de Primera Instancia se tendrá que pagar $90.00 en aquellos casos de Sala Superior[59].

No obstante, dicha regla general contiene excepciones que relevan a las partes del pago de los derechos arancelarios[60]. Por ejemplo, las personas indigentes están exentas del pago de aranceles y deberán cumplir con los requisitos establecidos, de las Reglas de Administración del Tribunal de Primera Instancia. Además, el Tribunal Supremo estableció lo siguiente:

> [H]emos dispuesto también por excepción que si una persona solicita por primera vez en la etapa apelativa que se le permita litigar como indigente, sin que medie fraude o colusión de su parte, y el tribunal rechaza su petición, no se desestimará su recurso si presenta los aranceles correspondientes después de vencido el plazo apelativo, una vez se deniega la solicitud para litigar *in forma pauperis*.[61]

También se ha dispuesto como una excepción a la regla de nulidad que **la desestimación no procede cuando la deficiencia arancelaria ocurre sin intervención de la parte ni intención de defraudar, sino por inadvertencia de un funcionario judicial, que acepta por equivocación un escrito sin pago alguno o por una cantidad menor de los aranceles que corresponden**. Tampoco es nulo el escrito judicial si la insuficiencia se debió a las instrucciones erróneas del Secretario del Tribunal, sin intervención de la parte, colusión o intención de defraudar[62]. (Énfasis nuestro).

---

[59] *In re: Aprob. Derechos Arancelarios RJ,* 192 DPR 397 (2015).
[60] *M-Care Compounding et al. v. Depto. Salud*, supra, pág. 176.
[61] Sección 6 de la Ley Núm. 17-1915, *supra*; *M-Care Compounding et al. v. Depto. Salud*, supra, pág. 176.
[62] *M-Care Compounding et al. v. Dpto. de Salud*, supra, págs. 176-177.

El Tribunal Supremo determinó en *Salas v. Baquero*, 47 DPR 108, 113-114 (1934) que:

> Por eso, hemos señalado que "[s]i el propósito de la ley es proteger los derechos del estado y evitar fraudes al erario, no parece lógico que una vez cubiertos los derechos del estado, una parte que en nada se perjudica pueda aprovecharse del error alegando que la actuación judicial es nula desde su origen". Así, en estos casos, el error puede subsanarse por la parte que adeuda el pago del arancel. (Citas suprimidas).

**III.**

Confrontados los hechos e incidentes procesales antes reseñados con la normativa jurídica esbozada, procedemos a discutir conjuntamente el primer, segundo y tercer señalamiento de error presentado por la señora González Santiago.

En síntesis, la apelante aduce que incidió el TPI al considerar la *Moción Asumiendo Representación Legal y Solicitud de Prórroga* instada por el apelado, por entender que la misma fue presentada de forma tardía y sin pagar el arancel correspondiente. Ante ello, la apelante sostiene que erró el foro primario al conceder la prórroga solicitada para presentar alegación responsiva.

Según surge del expediente ante nos, el 23 de junio de 2023, el foro primario emitió una *Resolución y Orden* mediante la cual le concedió al señor Zarcone Candelario un término de cinco (5) días para presentar su alegación responsiva. No obstante, el 30 de junio de 2023, el señor Zarcone Candelario compareció ante el TPI mediante *Moción Asumiendo Representación Legal y Solicitud de Prórroga.*

Conforme a la Regla 68.1 de Procedimiento Civil, "[c]uando el plazo concedido sea menor de siete (7) días, los sábados, domingos o días de fiesta legal intermedios se excluirán del cómputo"[63]. Por tanto, es forzoso concluir que el apelante compareció oportunamente antes de expirar el plazo concedido por el TPI.

---

[63] 32 LPRA Ap. V, R. 68.1.

Conforme a lo anterior, el foro primario, en su ejercicio de discreción judicial, concedió la prórroga solicitada hasta el 10 de julio de 2023, fecha en que el apelado presentó su alegación responsiva.

Respecto al pago del arancel por primera comparecencia del apelado, la normativa jurídica antes citada establece que el error de no adherir el arancel correspondiente se puede subsanar al pagar el mismo. Además, en el presente caso, no existen elementos suficientes para concluir que haya tenido la intención de defraudar al erario al presentar los documentos pertinentes. Cabe señalar que el pago del arancel correspondiente por primera comparecencia se emitió el 5 de julio de 2023. Por tanto, concluimos que los señalamientos de error primero, segundo y tercero no se cometieron.

En cuanto al cuarto, quinto y sexto señalamiento de error, la señora González Santiago sostiene que el foro primario se equivocó al desestimar la *Demanda*, toda vez que, según insiste, el permiso de construcción fue obtenido mediante dolo y engaño, por lo que debe revocarse. Además, sostiene que contrario a lo resuelto, es el tribunal de instancia el foro con jurisdicción para atender su reclamo, y no el DACo.

Tras un minucioso examen del recurso de apelación y los documentos que obran del expediente, concluimos que el TPI actuó correctamente al desestimar la demanda al amparo de la Regla 10.2 de Procedimiento Civil. Una lectura de las alegaciones contenidas tanto en la *Demanda* como en el recurso apelativo demuestran sin más que la argumentación de la señora González Santiago se circunscribe a violaciones a la Ley de Condominios, *supra*. En particular, la apelante sostiene que los trabajos de construcción que se llevan a cabo afectarán la fachada del edificio, por lo que el señor Zarcone Candelario está violentando la referida ley.

Ahora bien, la señora González Santiago presentó su recurso bajo el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, solicitando la

revocación del permiso, fundamentándose primordialmente en el incumplimiento con la Ley de Condominios, *supra*. En atención a la Ley Núm. 161-2009, *supra*, la señora González Santiago se limita a argumentar que el permiso fue obtenido mediante engaño, toda vez que, según alega, los planos presentados ante la Oficina de Permisos no concuerdan con el memorial explicativo sometido para solicitar el permiso de construcción.

Nótese del derecho expuesto que la solicitud para que se deje sin efecto un permiso al amparo del Artículo 14.1 de la Ley Núm. 161-2009, *supra*, es para las instancias específicas provistas por el propio artículo, el cual debe ser interpretado de conformidad con el Artículo 9.10 de la Ley Núm. 161-2009, *supra*. Es decir, un análisis de ambos artículos provee para que el TPI revoque un permiso otorgado, cuya solicitud se haya hecho utilizando información incorrecta o falsa o cuando, entre otras cosas, medie fraude, dolo, engaño, extorsión, soborno o la comisión de algún otro delito en el otorgamiento de un permiso. De un análisis de las alegaciones de las partes, del tracto procesal de la controversia y de los documentos que obran en el expediente, no se puede concluir que ha mediado alguna de tales circunstancias específicas que permitan revocar el permiso emitido.

A esos efectos, somos del criterio, al igual que el foro de instancia, que el *injunction* estatutario dispuesto por el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, no es el mecanismo para ventilar la reclamación de la señora González Santiago, la cual se ciñe a violaciones a la Ley de Condominios, *supra*. Tampoco podemos perder de vista que la señora González Santiago presentó una Querella ante el DACo, la cual aún se encuentra pendiente de adjudicación, de la cual surgen las mismas alegaciones y en donde se solicitan los mismos remedios incluidos en la reclamación incoada ante el foro judicial. De manera que, el asunto se está

ventilando de manera simultánea en el foro administrativo. En consecuencia, concluimos que no se cometieron los errores cuarto, quinto y sexto.

Advertimos pues, una vez el organismo administrativo pase juicio sobre ello, la señora González Santiago puede presentar un recurso de revisión judicial ante este foro, de estar inconforme con el curso decisorio de la agencia. Ello, a los fines de evaluar las alegadas violaciones a la Ley de Condominios, *supra*.

**IV.**

Por los fundamentos que anteceden, **confirmamos** la determinación apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones